389 So.2d 1289 (1980)
STATE of Louisiana
v.
Willie J. BAKER.
No. 66698.
Supreme Court of Louisiana.
October 6, 1980.
Dissenting Opinion November 24, 1980.
*1290 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Richard Pitre, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
William R. Ary, New Orleans, for defendant-appellant.
*1291 MARCUS, Justice.
Willie J. Baker was indicted by the grand jury for possession with intent to distribute heroin in violation of La.R.S. 40:966. Defendant entered a plea of not guilty at the arraignment. After a hearing, the trial judge denied defendant's motion to suppress physical evidence. Thereafter, defendant moved to withdraw his former plea of not guilty and to enter a plea of guilty as charged, expressly reserving his right to appeal the court's denial of his pre-plea motion to suppress.[1] The trial judge accepted the plea of guilty and sentenced defendant to life imprisonment at hard labor. On appeal, defendant relies on one assignment of error for reversal of his conviction and sentence.
Defendant contends the trial judge erred in denying his motion to suppress physical evidence seized from his residence pursuant to a search warrant. He argues that the affidavit supporting issuance of the search warrant failed to set forth facts demonstrating probable cause to believe that illegal drugs were in his residence.
The search warrant in question was issued to search the premises located at 914 Leboeuf Street, New Orleans, Louisiana, for the purpose of seizing "controlled dangerous substances, particularly opium and its derivatives, administering paraphernalia and supporting documents." It was issued based upon facts recited in an affidavit by Officers Donald Laderer and James Lewis. The affidavit was executed and the warrant issued on March 30, 1979, following a four-day investigation by police officers combined with information obtained from a confidential informant. The officers asserted in the affidavit that due to the information received from the confidential informant and the surveillance conducted by the officers, it was their belief that defendant was distributing illegal drugs to "Blanky," a self-admitted narcotics user, who in turn would sell the contraband to individual drug users in the uptown section of New Orleans, and that the drugs, and more particularly heroin, were being concealed at 914 Leboeuf Street. The property seized pursuant to execution of the warrant at defendant's residence at 914 Leboeuf Street consisted of 207 tinfoil packets of white powder, 1700 talwin tablets, 1700 pyribenziamine tablets, 8 orange tablets, $4527 in cash, a blue steel revolver and an automatic pistol. The affidavit generally recited the following facts to establish probable cause for issuance of the warrant:
(1) On March 26, 1979, a reliable confidential informant whose information has led to the arrest and subsequent convictions of persons engaged in narcotics trafficking within New Orleans contacted affiants and advised them that on that date he had purchased heroin from a negro male known as Blanky. The informant advised affiants that Blanky drives to various areas of uptown New Orleans to secure necessary funds from purchasers and then proceeds across the river to a location at which he purchases heroin from a negro male known as "Toe Joe." Blanky then proceeds back across the river to uptown locations to deliver the heroin to the buyers.
(2) On March 26, 1979, officers followed Blanky as he left his residence (place where informant had purchased heroin) and drove to the west bank. Blanky was immediately recognized as a self-admitted narcotics user. Blanky stopped his car at a convenience food store to use the phone and then proceeded to the Moonlight Lounge where he met with defendant. Blanky then returned to uptown New Orleans and stopped his car at Third and S. Claiborne where a group of men, one of whom was a self-admitted heroin user, gathered around the driver's window and then quickly disbursed.
(3) On March 27, 1979, officers observed Blanky park at the intersection of Willow Street and Washington Avenue where a group of men gathered around the driver's window.
(4) On March 28, 1979, officers observed Blanky again meet with defendant at the Moonlight Lounge. The officers then followed defendant to 914 Leboeuf Street. A computer check revealed that Willie Baker *1292 a/k/a "Toe Joe" had given this location as his address.
(5) On March 29, 1979, officers followed defendant from his residence at 914 Leboeuf Street and observed him meet with Blanky at a street in Gretna where Blanky entered defendant's car for a short period of time before they went separate ways. The officers followed Blanky as he drove across the river to Third and S. Claiborne where once again a group of men gathered around the driver's window and then disbursed.
(6) A computer check revealed that defendant had five felony arrests with three convictions, two misdemeanor arrests and eight city arrests. Defendant was last handled by the Narcotics Division on November 3, 1979, at which time he was charged with possession with intent to distribute 174 dosage units of heroin.
Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; La.Const. art. 1, § 5. Conformably, our Code of Criminal Procedure in article 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Richards, 357 So.2d 1128 (La.1978); State v. Smith, 350 So.2d 1178 (La.1977); State v. Williams, 338 So.2d 1365 (La.1976); State v. Sierra, 338 So.2d 609 (La.1976); State v. Hightower, 272 So.2d 363 (La.1973). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); State v. Richards, supra; State v. Smith, supra; State v. Williams, supra; State v. Sierra, supra; State v. Holmes, 254 La. 501, 225 So.2d 1 (1969).
In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court set forth, in a "two-pronged test," the criteria which a magistrate must follow in determining if an affidavit based upon hearsay has established probable cause for the issuance of a search warrant: (1) the affiant must articulate the basis for his belief that the informant is trustworthy, and (2) the affidavit must indicate the underlying circumstances from which the informant concluded that the narcotics were where he contended they would be. State v. Richards, supra; State v. Joseph, 351 So.2d 1162 (La.1977). Hence, the reliability of both the informant and his information must be demonstrated in the affidavit. Later, the Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), made the criteria more flexible by allowing an informant's tip which is inadequate under Aguilar standards to be corroborated by independent sources. These rules were adopted by this court in State v. Paciera, 290 So.2d 681, 685-86 (La.1974):
The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an un identified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons insufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect *1293 source and of the indirectly-obtained information.
The affidavit in the instant case satisfies the first Aguilar standard. It states that the informant has given reliable information in the past that has led to the arrest and subsequent convictions of persons engaged in narcotics trafficking within New Orleans.
In addition, an affidavit must satisfy the second Aguilar standard by demonstrating the reliability of the informant's information.
In the instant case, the information supplied by the confidential informant, standing alone, fails to satisfy the second prong of the Aguilar test. The affidavit states that the informant told the affiants that Blanky purchases his drugs across the river from a negro male known as Toe Joe. It fails to indicate the underlying circumstances from which the informant reached this conclusion.
The finding that the informant's tip, standing alone, fails to satisfy the second prong of the Aguilar test does not, however, end our inquiry into the sufficiency of the affidavit supporting the warrant. State v. Richards, supra; State v. Williams, supra. Affidavits must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); State v. Williams, supra; State v. Roach, 322 So.2d 222 (La.1975). The magistrate is obligated to render a judgment based upon a common sense reading of the entire affidavit. Thus, when an informant's statement fails to meet Aguilar's two-pronged test, the affidavit may nevertheless be sufficient if corroborating facts from police observation permit "the suspicion engendered by the informant's report to ripen into a judgment that a crime was probably being committed." Spinelli v. United States, supra; State v. Williams, supra. An informant's tip can be significantly buttressed if either independent observations by the affiant corroborate sufficient details of the tip (whether suspicious or not) to negate the possibility that the informant fabricated his report, or independent observations by the affiant contribute to a showing of probable cause by revealing not merely normal patterns of activity but activity that reasonably arouses suspicion. Gonzales v. Beto, 425 F.2d 963, 969 (5th Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970), cert. denied, Acosta v. Beto, 400 U.S. 1001, 91 S.Ct. 476, 27 L.Ed.2d 452 (1971).
In the instant case, the results of police surveillances are sufficient to give rise to a reasonable suspicion that defendant was committing the crime alleged by the informant. The informant gave an account of how Blanky, the person from whom he had that day purchased heroin, drove to various areas of uptown New Orleans to secure funds from purchasers, met with defendant Toe Joe on the west bank to obtain heroin, and then returned to uptown locations to distribute the heroin. On three occasions within four days, officers observed Blanky, who was recognized immediately as a narcotics user, meet with defendant. After two of these meetings, officers followed Blanky from the west bank to uptown New Orleans where a group of men gathered around the driver's window of his car and then quickly disbursed. Officers recognized one of these men as a self-admitted heroin user. Clearly, it was reasonable for the officers to suspect that Blanky was distributing heroin to these men. Furthermore, police were aware that defendant's record contained five felony arrests with three convictions, including a charge for possession with intent to distribute 174 dosage units of heroin. Although a suspect's reputation, standing alone, is insufficient to establish probable cause, it is clearly a factor-a practical consideration of everyday life upon which an officer or magistrate may properly rely in assessing the reliability of an informant's tip for purposes of preparing an affidavit and in determining whether an affidavit establishes reasonable cause for issuance of a search warrant. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); State v. Williams, supra. Thus, the informant's tip about Blanky's pattern of drug purchases from defendant and subsequent distributions *1294 in uptown New Orleans was sufficiently corroborated by independent observations to negate the possibility that the informant fabricated his report.
The informant's tip is further buttressed by the officers' observing defendant engaged in activities that reasonably arouse suspicion. Although defendant's three meetings with Blanky, a heroin narcotics user and suspected dealer, are not in and of themselves suspicious conduct, these meetings do arouse suspicion when other relevant factors are considered: Blanky's conduct after these meetings, defendant's criminal record, and the informant's allegations. It is important to note that the corroborating facts taken alone need not give rise to suspicion strong enough to create probable cause; the affidavit also contains the informant's tip and information on his reliability. Gonzales, supra.
Defendant further contends that, because no one observed heroin or any other evidence at his residence and because the informant did not allege that heroin could be found at defendant's residence, there was no probable cause to search his residence. In State v. Guidry, 388 So.2d 797 (1980), this court adopted the views of the Supreme Court of Minnesota regarding an affidavit's failure to contain an allegation as to the location of evidence:
Although the affidavit did not contain any averment of firsthand information that fruits of the crime would be found at defendant's residence, the Fourth Amendment does not make such information essential. All that is required is that the affidavit, interpreted in a commonsense and realistic manner, contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched.
Rosillo v. State, 278 N.W.2d 747, 748-49 (Minn.1979). Although the affidavit in the instant case did not state that the informant knew defendant kept heroin at his residence, it was reasonable for the officers and the magistrate to infer that defendant would store his illicit drugs at his residence.
In discussing judicial review of warrants, the Court in United States v. Ventresca, supra, 380 U.S. at 108, 85 S.Ct. at 745 stated:
[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements, of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
In State v. Paciera, supra, at 687, we stated:
As Spinelli observed, "in judging probable cause magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense" and "their determination of probable cause should be paid great deference by reviewing courts." 393 U.S. 419, 89 S.Ct. 590. Further, where the law enforcement officers have respected the constitutional mandate to secure a warrant before searching, "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Ventresca, at 380 U.S. 109, 85 S.Ct. 746. See also Jones at 362 U.S. [257] 270, 80 S.Ct. [725] 735-736 [4 L.Ed.2d 697].
We are satisfied that the affidavit, taken as a whole, contains sufficient facts for a magistrate to reasonably determine that probable cause existed for issuance of the *1295 search warrant in the instant case. Therefore, it would be inappropriate for this court to strike down the warrant's validity due to any technical shortcomings it might contain.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DIXON, C. J., dissents.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent. The affidavit fails to disclose the informant's basis of knowledge for saying that "Blanky" purchased his drugs from "Toe Joe." See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Such a defect in the basis of knowledge prong of Aguilar cannot be cured by independent police observations. See Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 779-80 (1974). Thus, viewing the affidavit in the most favorable light to the prosecution, it at most establishes that the police had an articulable suspicion that the defendant was engaged in illicit drug related activity; it does not establish probable cause to believe that any drugs were present at 914 Leboeuf Street.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).