399 So.2d 149 (1981)
STATE of Louisiana
v.
Rick MENA.
STATE of Louisiana
v.
Robert THRIFT.
STATE of Louisiana
v.
Jennifer KNIGHT and Mary Cook.
Nos. 80-K-1506, 80-K-2297 and 80-KA-2636.
Supreme Court of Louisiana.
March 2, 1981.
Concurring Opinion April 14, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-relator in No. 80-K-1506, for plaintiff-respondent in No. 80-K-2297, and for plaintiff-appellee in No. 80-KA-2636.
Patrick J. Fanning, Asst. Dist. Atty., for plaintiff-appellee, in No. 80-KA-2636.
Frederick J. King, Jr., New Orleans, for defendant-respondent in No. 80-K-1506, defendant-relator in No. 80-K-2297 and defendant-appellant in No. 80-KA-2636.
*150 MARCUS, Justice.[*]
Rick Mena was charged by bill of information with possession with intent to distribute cocaine in violation of La.R.S. 40:967. His motion to suppress was granted by the trial judge (Judge Frank A. Marullo, Jr.). Upon the state's application, we granted a writ under our supervisory jurisdiction to review the correctness of that ruling.[1]
Robert Thrift was charged by bill of information with possession with intent to distribute marijuana in violation of La.R.S. 40:967. His motion to suppress was denied by the trial judge (Judge Bernard J. Bagert, Sr.). Upon Thrift's application, we granted a writ under our supervisory jurisdiction to review the correctness of that ruling.[2]
Jennifer Knight was charged by bill of information with possession of cocaine in violation of La.R.S. 40:967. In the same information, Mary Cook was charged with possession of marijuana in violation of La.R.S. 40:967. At arraignment, defendants entered pleas of not guilty. Their motion to suppress was denied by the trial judge (Judge Jerome M. Winsberg). Thereafter, defendants withdrew their former pleas of not guilty and entered pleas of guilty as charged expressly reserving their right to appeal the court's denial of their pre-plea motion to suppress.[3] Knight was sentenced to serve one year in the parish prison; the incarceration was suspended and Knight was placed on probation for one year. Cook was sentenced to serve six months in the parish prison; the incarceration was suspended and Cook was placed on probation for six months. On appeal to this court, defendants rely on one assignment of error, viz., the trial judge erred in denying their motion to suppress for reversal of their convictions and sentences.
We consolidated these cases for argument as each arises out of the same drug transaction and seizure of evidence pursuant to the same search warrant and contains a common issue: the sufficiency of the affidavit upon which the search warrant was issued.
The search warrant was issued to search the premises located at 3617 Delgado (upper part), New Orleans, Louisiana, for the purpose of seizing "all contraband controlled dangerous substances, more particularly cocaine, and all documents and instrumentalities related to its distribution." The warrant was issued based upon facts recited in the affidavit by New Orleans Police Department narcotics officer Harry O'Neal and Jefferson Parish narcotics agent Alan Drumm. The affidavit was executed and the warrant issued on May 3, 1980 following an undercover operation and stakeout involving Orleans and Jefferson narcotics agents. The property seized pursuant to execution of the warrant at 3617 Delgado included several clear plastic bags containing either white powder or vegetable matter and various instrumentalities related to the distribution of cocaine and marijuana. Mena was arrested prior to the securing of the warrant and the other defendants were arrested at 3617 Delgado following the search of the premises.
The affidavit generally recited the following facts to establish probable cause for issuance of the warrant:
1. At about 8:00 p. m. on May 3, 1980, an undercover Jefferson Parish narcotics agent met with Robert L. Woodard near the Fotomat at Lakeside Shopping Center to purchase one-fourth of an ounce of cocaine. Woodard informed the agent that he had to get the cocaine from "his connection" and told the agent to meet him at Pelican Bowling Lanes at 8:50. After making a phone call, Woodard left the shopping center in a silver BMW. He was followed by Jefferson Parish agents including affiant Drumm to 3617 Delgado where he was *151 observed entering an upper floor apartment at about 8:20.
2. At about 8:40 p. m., Woodard exited the apartment accompanied by a white male later identified as Dick Mena. They entered Woodard's BMW and proceeded directly to Pelican Bowling Lanes where they met with the undercover agent. When the agent came over to Woodard's car, Mena showed the agent a clear plastic bag of white powder and asked him if he wanted to sample it. The agent responded that he wanted to do so in his car. Mena handed the bag to Woodard who exited his BMW and entered the agent's car. Once the agent had possession of the suspected cocaine, he signaled the surveillance agents by tapping his brakes. The surveillance agents led by agent Drumm arrested Woodard, Mena and the undercover agent and seized the clear plastic bag of white powder. A field test of the powder indicated the presence of cocaine. Once clear of the arrest location, the undercover agent was separated from Woodard and Mena. He then informed affiant Drumm of the events of his undercover operation.
3. After being arrested and advised of his rights, Woodard told Officer Drumm that he wanted to help out and that "he was scoring his cocaine from Mena and that there was another occupant at Mena's residence awaiting their return." Officers from Orleans and Jefferson then proceeded to 3617 Delgado to secure the residence and prevent the occupants from destroying the contraband when Mena did not return. Upon arrival, the officers informed the occupants that they were under investigation for possession of narcotics. The occupants were then secured in the living room awaiting the officers' return with the search warrant.
Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S.Const. Amend. IV; La.Const. art. 1, § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Wichers, 392 So.2d 419 (La.1980); State v. Baker, 389 So.2d 1289 (La.1980); State v. Richards, 357 So.2d 1128 (La.1978). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 38 L.Ed.2d 306 (1972); State v. Wichers, supra; State v. Baker, supra; State v. Richards, supra.
In our opinion, the facts recited in the affidavit clearly provide enough information to support an independent judgment that probable cause existed for the issuance of the search warrant. An undercover agent seeking to purchase cocaine was told by Woodard that he had to get the cocaine from "his connection." After making a phone call, Woodard was secretly followed by narcotics agents including affiant Drumm to 3617 Delgado where he was observed entering the upper floor apartment. Shortly thereafter, Woodard exited the apartment accompanied by Mena. The two entered Woodard's car and drove directly to a predetermined place to meet with the undercover agent who was given a clear plastic bag containing white powder. A field test of the powder indicated the presence of cocaine. Given these facts from the undercover operation and surveillance, a man of reasonable caution would conclude that Woodard obtained his cocaine from Mena at 3617 Delgado.
*152 Furthermore, this conclusion is buttressed by Woodard's post-arrest statement that "he was scoring his cocaine from Mena and that there was another occupant at Mena's residence awaiting their return." Defendants contend that the affidavit is insufficient in that it contains no recitation that the informant Woodard has proven credible or reliable in the past. While the affidavit contains no averment that the informant had previously given correct information, such an averment of previous reliability is not necessary. In determining probable cause, the inquiry is whether the informant's present information is truthful or reliable. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In the instant case, Woodard stated that he was scoring his cocaine from Mena. This admission was a declaration against penal interest because it supplied evidence against him of guilty knowledge, an essential element of the crime of the possession of a controlled dangerous substance. State v. Mena, 344 So.2d 357 (1976). Admissions of crime carry their own indicia of credibility sufficient at least to support a finding of probable cause to search. United States v. Harris, supra; State v. Welsh, 371 So.2d 1314 (La.1979); State v. Mena, supra.
Although the affidavit in the instant case does not contain any averment of firsthand information that cocaine would be found at 3617 Delgado, the fourth amendment does not make such information essential. All that is required is that the affidavit, interpreted in a commonsense and realistic manner, contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched. State v. Baker, supra; State v. Guidry, 388 So.2d 797 (La.1980). The undercover agent was told by Woodard that he had to get his cocaine from his connection. Agents then observed Woodard drive to 3617 Delgado. A short time later, Woodard was observed leaving the apartment at 3617 Delgado accompanied by Mena. The two drove straight to the meeting place with the undercover agent who was then shown the cocaine. After his arrest, Woodard told officers that "he was scoring his cocaine from Mena and that there was another occupant at Mena's residence awaiting their return." It was reasonable for the officers and the magistrate to infer that Woodard obtained his cocaine from Mena at 3617 Delgado and that Mena would store his illicit drugs at the location identified by Woodard to be Mena's residence.
In discussing judicial review of warrants, the Court in United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), stated:
[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
In State v. Paciera, 290 So.2d 681, 687 (La.1974), we stated:
As Spinelli observed, "in judging probable cause magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense" and "their determination of probable cause should be paid great deference by reviewing courts." 393 U.S. [at] 419, 89 S.Ct. [at] 590. Further, where the law enforcement officers have respected the constitutional mandate to secure a warrant before searching, "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal *153 cases in this area should be largely determined by the preference to be accorded to warrants." Ventresca, at 380 U.S. 109, 85 S.Ct. [at] 746. See also Jones at 362 U.S. [at] 270, 80 S.Ct. [at] 735-736.
We are satisfied that the affidavit, taken as a whole, contains sufficient facts for a magistrate to reasonably determine that probable cause existed for issuance of the search warrant in the instant case.

DECREE
For the reasons assigned, in State v. Mena, No. 80-K-1506, the ruling of the trial court's granting defendant's motion to suppress is reversed and set aside and the case is remanded for further proceedings. In State v. Thrift, No. 80-K-2297, the trial court's denial of the defendant's motion to suppress is affirmed and the case is remanded for further proceedings. In State v. Knight and Cook, No. 80-KA-2636, defendants' convictions and sentences are affirmed.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Although the case is not free from doubt, I ultimately concur in the majority's decision. The affidavit establishes a strong probability that Mena and Woodard were dealers in illicit drugs. The inference that Mena had a store of drugs at his residence at the time of the arrest is not so easily made from the affidavit's facts. However, when bolstered by the activities observed by the police officers and Woodard's statement contrary to his penal interest, I believe that a minimally sufficient basis for belief that contraband was located there was established.
NOTES
[*] Judges Grover L. Covington, Remy Chiasson and Elmo E. Lear of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Dennis and Blanche.
[1] 390 So.2d 899 (La. 1980).
[2] 393 So.2d 726 (La. 1980).
[3] State v. Crosby, 338 So.2d 584 (La. 1976).