CIACCIO, Judge.
Keith and Kevin Dillon have been charged by bill of information with five counts of receiving stolen property taken in several burglaries, in violation of La. R.S. 14:69. Kevin Dillon has also been charged with one count of simple burglary of the home of one Mark Duffy on March 13,1982, in violation of La. R.S. 14:62.2. Defendants pleaded not guilty and defendant Kevin Dillon moved to suppress evidence consisting of hundreds of items of property (allegedly the fruits of the burglaries) taken from the Dillons’ home by the New Orleans Police pursuant to a search warrant issued on March 18,1982. Defendant claimed that the affidavit[1] submitted in support of the application for the search warrant did not establish probable cause for its issuance, thus violating his rights under the 4th and 14th Amendments to the U.S. Constitution; Art. 1., Sec. 5., Louisiana Constitution of 1974; and La. C. Cr. P., Art. 162. On July 6, 1982, the trial court granted this motion to suppress and the State has applied to this Court for review of that ruling.
The trial judge, in her reasons for judgment, found the affidavit inadequate to establish probable cause to search the Dillon residence, under the two-pronged test of State v. Paciera, 290 So.2d 681 (La. 1974). That case held that if an affidavit serving as the basis for issuance of a search war *48 rant is based entirely on hearsay, it must set forth sufficient underlying circumstances and details to allow the issuing magistrate to find both the informant and the information given reliable. The trial court found neither prong of the test satisfied, since the informant was not alleged to be reliable or to have given accurate information in the past, and since the informant was not alleged to have had any direct knowledge that the stolen goods would be at the Dillon residence.
The informant did allege that Keith and Kevin Dillon and another individual named Jerry Duhon were the perpetrators of some of the burglaries in the area; that they told him they had broken into a house and had taken certain named items; and that the house he pointed out to police (which was to be the subject of the search) was the residence of all three alleged perpetrators.
However, since the informant did not say he observed any of the stolen items at the residence, nor that the defendants told him they had any such items there, nor any other such direct allegation which could lead to this residence as the place where the stolen goods were to be found, the trial court concluded there was no factual basis for a search of the residence. The trial court found the independent corroboration by police, either alone or in combination with the information from the informant, also to be insufficient to establish probable cause for the search since it too included no direct finding that the stolen goods would be at the residence. We do not agree.
Factors which support the credibility of an unidentified informant may include either prior accurate reports or specific independent corroboration of the accuracy of the instant report. State v. Paciera, supra. Here, the police were able to corroborate virtually all the significant pieces of information given by the informant, by independent evidence. Police found that a fingerprint lifted from the point of entry of the recently burglarized residence was that of Kevin Dillon; all of the specific items of property named by the informant were identical to items on the list of stolen property which was taken in the Duffy burglary; New Orleans Public Service records revealed that the house pointed out to police was listed as the residence of a Jerry Dillon. Furthermore, the factual detail of the information given by the informant (notably, the detailed description of stolen items from the Duffy home, some of which were highly uncommon) itself serves to support the informant’s credibility and to negate the possibility that he fabricated his story. Draper v. U.S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
The Court in Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1959), discussing Draper, supra, observed: “A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way.” 393 U.S. at 417, 89 S.Ct. at 589.
Affidavits should be read in a commonsense and realistic manner, and, as the Louisiana Supreme Court observed in Paci-era, supra, quoting Spinelli, supra:
“ ‘... in judging probable cause magistrates are not to be confined to niggardly limitations or by restrictions on the use of their common sense’, and ‘their determination of probable cause should be paid great deference by reviewing courts.’ 393 U.S. 419, 89 S.Ct. 590. Further, where the law enforcement officers have respected the constitutional mandate to serve a warrant before searching, ‘Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.’” (Citations omitted) 290 So. 2d at 687.
In discussing judicial review of warrants, the Court in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1963), stated:
The Fourth Amendment’s commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court’s cases are to be followed *49 and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
In her reasons for judgment the trial court noted that the affidavit establishes probable cause to arrest the defendants. But it was her view that the affidavit’s lack of stated facts specifically connecting the stolen goods with defendant’s residence made the affidavit fatally defective as support for the search warrant.
There is a substantial body of Louisiana jurisprudence, however, as well as case law from Federal and other state courts, holding that there is no need for stated facts explicitly connecting the stolen goods with defendant’s residence to establish the probability that the stolen goods may be found at the residence of the defendants. The required nexus may be established by such considerations as the nature of the crime, the nature of the items sought to be found, the time lapse between the commission of the crime and the date the search warrant is applied for, and other such factors. These elements give rise to a reasonable inference that the most likely place the defendant would store such items (as in this case, the fruits of a burglary), would be at his home, especially if there are no facts to suggest any other likely locations (such as multiple residences, vehicles, etc.). See e.g., State v. Poree, 406 So.2d 546 (La.1981); State v. Mena, 399 So.2d 149 (La.1981), State v. Baker, 389 So.2d 1289 (La.1980), State v. Guidry, 388 So.2d 797 (La.1980). See also, U. S. v. Lucarz, 430 F.2d 1051 (9th Cir. 1970); U. S. v. Damitz, 495 F.2d 50 (9th Cir. 1974); U. S. v. Chester, 537 F.2d 173 (5th Cir. 1976); U. S. v. Salas, 488 F.2d 939 (5th Cir. 1974); U. S. v. Teller, 412 F.2d 374 (7th Cir. 1969); Aron v. United States, 382 F.2d 965 (8th Cir. 1967); Anderson v. U. S., 344 F.2d 792 (10th Cir. 1965); Porter v. U. S., 335 F.2d 602 (9th Cir. 1964); U. S. v. Bowers, 534 F.2d 186 (9th Cir. 1976); U. S. v. Rahn, 511 F.2d 290 (10th Cir. 1975).
State v. Guidry, supra, is the leading Louisiana case in this area, and closest on point. The informant in Guidry (arrested for armed robbery) implicated the defendant as the person who received and paid the informant for stolen property on several occasions. The informant gave police the nickname of this person and his contact telephone number. Police traced the number to defendant’s residence and stated that this individual was well known to them under the nickname given by informant. On this basis, a search warrant was issued to search defendant’s residence for stolen property.
Defendant Guidry argued that the affidavit did not show a connection between his alleged illegal activities and his residence, and thus did not establish probable cause to believe any stolen property was there. The Louisiana Supreme Court disagreed, holding that the facts given did give rise to a reasonable inference that some of the stolen property was probably at the defendant’s residence. The Court observed in footnote: “Relevant considerations [as to whether such an inference is reasonable] include the type of crime, the nature of the items sought, the opportunity for concealment, and the inference as to where a criminal would hide stolen property. Although the property in this case could have been stored elsewhere, it was reasonable to assume that the normal place a criminal dealing in stolen jewelry would keep such items [was] at his house,”, 388 So.2d at 800, n. 1.
The Louisiana Supreme Court in Guidry, supra, and in Baker, supra, adopted the reasoning of the Minnesota Supreme Court in a similar case, as follows:
“Although the affidavit did not contain any averment of firsthand information that fruits of the crime would be found at *50 defendant’s residence, the Fourth Amendment does not make such information essential. All that is required is that the affidavit, interpreted in a common sense and realistic manner, contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched.” Rosillo v. State, 278 N.W.2d 747, 748-49 (Minn.1979). (Other citations omitted.)
Here, as in Guidry, supra, the facts set out in the affidavit give rise to a reasonable inference that the items sought were probably at the location to be searched. The crime committed was a burglary which took place only a week before the date of the warrant request. The items sought to be found consisted of a long list of stolen goods, some of them bulky and requiring protection from the elements. The place to be searched, according to the informant, was the residence of all three alleged perpetrators. Although, as in Guidry, supra, the stolen property could have been stored somewhere else, it seems reasonable to assume that the normal place the perpetrators would have kept the items was at their residence. There are no facts to suggest another possible hiding place. Furthermore, since the burglary had occurred only a week before, it would seem unlikely that the perpetrators had had sufficient time to dispose of all the stolen items elsewhere.
The Louisiana Supreme Court repeated its holding in Guidry, supra in at least three later cases (Mena, Poree, and Baker, see citations above) all involving similar affidavits, in that there were no stated facts placing contraband or stolen goods at the respective defendants’ residences. Nevertheless, the Court found in each case that probable cause for a search of the residence could be established by reasonable inferences to be drawn from the facts and circumstances of the case, as set out in the affidavit, such as those described in Guidry, supra.
In Poree, supra the affidavit in question tated that “through a conversation with” defendant, the officers believe stolen items to be stored in defendant’s apartment. The Court agreed with defendant that this mere allusion to a conversation, without stating the contents, did not provide probable cause to issue a search warrant for the apartment. Nevertheless, the Court found that the remaining facts in the affidavit (as to the type of crime, the nature of items to be found, proximity of the residence to the robbery) did support a reasonable belief that the items might be found at defendant’s residence.
The Court reasoned, as it had in Guidry, supra:
The affidavit must show a sufficient nexus between the items to be seized and the place to be searched. Without direct observation, the appropriate connection may be manifested by the type of crime, the nature of the items sought, the extent of opportunity for concealment, and normal inferences as to where a criminal would be likely to hide the instrumentalities and fruits of the crime. United States v. Lucarz, 430 F.2d 1051 (9th Cir. 1970). 406 So.2d at 547.
See Also: United States v. Bowers, 534 F.2d 186 at 192 (9th Cir. 1976), where the Court stated:
“The magistrate is not required to determine whether in fact the items to be searched for are located at the premises to be searched, but only whether there is reasonable ground to believe they are there, United States v. Damitz, 495 F.2d 50 (9th Cir. 1974). This standard is met. From the information in the affidavit the magistrate could reasonably infer that at least some of the objects sought were probably at the address, even though ‘the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect’s opportunity for concealment, and normal inferences as to where a criminal would be likely’ to conceal the property sought.” (Citation omitted)
*51 The affidavit in question sets out facts shown to be reasonably trustworthy by independent corroboration, on which a magistrate could have found probable cause to issue a search warrant for defendant’s residence, for items taken in the burglary of the Duffy home. Although facts supporting probable cause to arrest do not necessarily give rise to probable cause to search a defendant’s residence, the facts here appear to do so, considering the nature of the crime, the nature of the items sought to be found, the proximity in time between the crime and the request for a warrant and the reasonable inference that the residence of all the alleged burglars would be the most likely place to store stolen goods pending disposal. That such facts and inferences may be employed to provide a nexus between alleged illegal activity and a defendant’s residence so as to provide probable cause to search the residence is well established by recent Louisiana jurisprudence, and is not inconsistent with the Fourth Amendment principles as articulated by the United States Supreme Court.
As the Louisiana Supreme Court stated in Guidry, supra:
“.the issue before us does not involve a particular individual’s right to a fair determination of his guilt or innocence. The issue is the applicability of the exclusionary rule, which is totally unrelated to the guilt or innocence of this particular individual. The exclusionary rule involves a balancing between society’s right to have its individual members live in privacy and freedom from police state tactics and society’s right to have its individual members live in safety and freedom from crime. The Federal and state constitutions only protect citizens from unreasonable searches and seizures. Since all police procedures in this case were conducted reasonably, there is no reason to interpret probable cause technically or to apply mechanically a rule intended to deter misconduct and bad faith law enforcement procedures.”
We conclude that the search in question was a reasonable one that violated neither constitution nor statute.
Accordingly, mandamus is granted, and it is ordered that the Honorable Miriam G. Waltzer, Judge, Criminal District Court, Section “A”, set aside her ruling granting the motion to suppress and in lieu thereof deny the motion to suppress.
REVERSED AND REMANDED.

. The affidavit in support of the application for the search warrant served on the Dillon’s home at 6201 Dorothea Street recites the following reasons for issuance of the warrant:
“On 03-13-82, the residence of a subject named Mark Duffy was burglarized under item C-13114-82. During the investigation officers lifted fingerprints which were from the point of entry. A lengthy list of stolen property was made and is attached to this application.
“On 03-13-82, Officer Terrence Duffy had occasion to speak to an informant who told Officer Duffy that the perpetrators of some of the burglaries in this district are named Keith Dillon and Kevin Dillon. Also, that another subject named Jerry Duhon was involved in numerous burglaries in New Orleans and in Baton Rouge. At this time, the Latent Print section was contacted and the names were given to Detective Loosemore who checked the names with the prints lifted under the above item number. Loosemore positively identified the print as belonging to Kevin Dillon, w/m, date of birth: 12-12-63.
“At this time Officer Terrence Duffy again spoke to his informant and was told that he had been told by the two Dillon brother(s) and Duhon that they had broke into a house and got a gold Police badge, a police radio and gun and an Akai reel to reel, a Panasonic eight track recorder player and a quadraphonic stereo system. This property is identical to property taken in the above burglary. At this time the informant took Officer Terrence Duffy to 6201 Dorothea Street and pointed the residence out and stated that this was the home of Keith and Kevin Dillon and that Duhon was staying at this address also because his parents had thrown him out of their house.
“A check was made with Public Service and it was learned that the residence at 6201 Dorothea Street is listed as a Jerry Dillon reisind (sic) at this location.”
The Affiant is Terrence Duffy.