422 So.2d 1131 (1982)
STATE of Louisiana
v.
John PATTERSON.
No. 82-KA-0357.
Supreme Court of Louisiana.
November 29, 1982.
*1132 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Mary Charlotte McMullen, William O'Hara, Asst. Dist. Attys., for plaintiff-appellee.
John Wilson Reed, Glass & Reed, New Orleans, for defendant-appellant.
MARCUS, Justice[*].
John Patterson was charged by bill of information with possession of cocaine in violation of La.R.S. 40:967. At his arraignment, defendant entered a plea of not guilty to the charge. Defendant then filed a motion to suppress. After a hearing, the trial judge denied the motion. Thereafter, defendant withdrew his former plea of not guilty and entered a plea of guilty as charged expressly reserving his right to appeal the court's denial of his motion to suppress.[1] Pursuant to La.R.S. 40:983, the trial judge placed defendant on probation for five years on the special condition that he pay $250 to the Criminal Court Operating Fund. Defendant was further ordered to pay court costs of $74.50 or in default thereof to serve thirty days in parish prison. On appeal, defendant relies on one assignment of error for reversal of his conviction and sentence.
Defendant contends the trial judge erred in denying his motion to suppress evidence seized pursuant to an invalid search warrant. He argues that the affidavit supporting the issuance of the search warrant contained misrepresentations and omitted material facts without which the affidavit did not recite facts sufficient to establish probable cause. He further argues that the affidavit contained intentional misrepresentations, thereby requiring that the warrant itself be quashed.
The search warrant in question was issued to search the premises located at 1574 Jefferson Avenue, Apt. D, New Orleans, Louisiana, for the purpose of seizing a "carpenters mallet, pry bar, one black leather brief case, personal papers in name of Julian G. Hillery." It was issued upon facts recited in an affidavit by Officers Stephen Gordon and John Riviere. The affidavit was executed and the warrant was issued on June 10, 1981. The property seized pursuant to execution of the warrant at defendant's residence at 1574 Jefferson Avenue, Apt. D, consisted of a small amount of cocaine and drug paraphernalia. The affidavit recited the following facts to establish probable cause for issuance of the search warrant:
(1) On 4-3-81 at about 1:30 PM the residence at 1911 Broadway Ave. belonging to one Julian Hillery was burglarized. Investigating Officer Sam Bua assigned to Unit 211 investigating the original incident noticed that entry was gained through the front door of the residence facing Broadway Ave. Officer Bua also noticed that the bedroom section of the residence was entered by the perpatrator(s) (sic) and that only certain drawers were tampered with by the perpatrator(s) (sic). Officer Bua at that time learned from the victim Hillery that the following items were taken as a result of the burglary:
1-Scotts International Stamp Collection-Part X-XXXX-XXXX[;] 1-Scotts International Stamp Collection-Part XX-XXXX-XXXX[;] 1-Scotts International Stamp Collection-Part III-1945-1949[;] 1-Scotts International Stamp Collection-Part IV-1949-1954[;] 1-Scotts International Stamp Collection-Part VI-1964-1967[; and] one black leather brief case containing personal papers in the name of Julina (sic) G. Hillery.
(2) On 6-9-81 at about 10:55 PM the victim Hillary was confronted at his residence by one John N. Patterson WM 4-10-45 residing 1574 Jefferson Ave. Apt. D who was in possession of the previous *1133 described stamps. The subject Patterson at that time exchanged the stamps for one thousand dollars which was given him by the victim Hillary. Officers Riviere and Gordon who had positioned themseeves (sic) in the victims residence during the exchange confronted the subject Patterson thus effecting the arrest.
(3) The arrested subject, John Patterson, is a carpenter by trade and would have the type tools which were used to force entry into 1911 Broadway St. The door was forced open with a pry bar and what appeared to be a carpenters mallet. The NOPD Crime Lab took samples of the wood chips, and the pry marks made by the tools to be used for comparison if the tools are recovered.
(4) Officers therefore request that this warrant be issued in order that they may search the residence of Patterson in order to recover the pry bar and carpenters mallet. (Emphasis added.)
The following facts underlying the issuance of the search warrant were adduced at the hearing on the motion to suppress. On April 3, 1981, the residence of Julian Hillery located at 1911 Broadway in New Orleans was burglarized. The only things removed from the residence were six stamp books and a brief case containing personal papers. According to Hillery, entry was apparently secured by beating on the front door with a mallet until one of the panels split, permitting the door to be opened by the use of a key located on the inside of the door. Mr. Hillery testified that the only marks he observed on the outside of the door were "mallet marks"; he saw no pry bar marks. Officer Gordon, one of the affiants, testified that information in the affidavit was obtained from Hillery, the initial police incident report, and the crime scene technician report.[2] However, the initial police incident report only indicated that entry was made through the front door "by some type of tool which was used to break out one of the panels." The crime scene technician report gave no indication of the type of tool used or the nature of the damage to the front door (point of entry). The brief case and most of the papers were recovered about one week after the burglary and Hillery testified that he reported the recovery to Officers Gordon and Riviere. Gordon testified that he did not remember if Hillery had told him that his brief case and papers had been recovered; Riviere did not testify at the suppression hearing. About one month after the burglary, Hillery erected a large sign on his front lawn advertising a $1,000 reward for the return of his stamp collection, no questions asked, and listed his phone number. A large picture of the sign together with a story appeared in the local newspaper.
More than two months after the burglary (June 8, 1981), Hillery received a phone call from defendant concerning the reward. Defendant stated that he could probably get the stamp books back. Hillery indicated that he did not have the $1,000 at that time but would withdraw the money from the bank. Defendant indicated that he would call back later in the week. Hillery reported the phone conversation with defendant to the police.
On June 9 (the next day), defendant called Hillery again. He told Hillery that he now had the stamp books and made arrangements to bring them to Hillery's residence in return for the $1,000 reward. He also told Hillery to leave the sign up in his yard for some time because he did not want the person from whom he had obtained the stamp books to know that they had been returned. He indicated that that person was the one who had broken into his (Hillery's) house and was "crazy." Officers Gordon and Riviere were present when Hillery received the phone call from defendant.
Pursuant to his second call, defendant came to Hillery's residence and returned the stamp books, first giving him five books, and then, after receiving the $1,000 *1134 reward, told him that the sixth book could be found at a certain location around the corner. Immediately after this transaction, defendant was arrested by Officers Gordon and Riviere. At some point after his arrest, defendant informed the officers that he was a carpenter. Five or six hours after his arrest, the officers obtained and executed a search warrant at defendant's residence as aforesaid.
Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. Amend. IV; La. Const. art. 1, § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. State v. Mena, 399 So.2d 149 (La.1981). However, if unintentional misstatements are made by the affiants seeking to obtain a search warrant, these misstatements must be excised and the remainder used to determine whether or not the affidavit sets forth probable cause for issuance of a warrant. State v. Rey, 351 So.2d 489 (La.1977). Similarly, when the affiant omits material facts without an intent to deceive, the reviewing court must add the omitted facts to those originally included in the affidavit and retest the sufficiency of the showing of probable cause. State v. Lehnen, 403 So.2d 683 (La.1981).
In the instant case, the affidavit stated that the purpose for searching defendant's residence was to seize a "carpenters mallet, pry bar, one black leather brief case, personal papers of Julian G. Hillery." Among the items mentioned in the affidavit as having been taken during the burglary was a "brief case containing personal papers." However, the brief case and most of the papers had already been recovered and this fact had been reported to the affiants. The affidavit further stated that entry was accomplished through a door which had been forced open "with a pry bar and what appeared to be a carpenters mallet" and that since the crime lab had taken samples of the wood chips and "pry marks" made by the tools, recovery of the "pry bar and carpenters mallet" were being sought for the purpose of comparison. Despite these recitations, there had been no information made available to affiants that entry had been made with a pry bar or of the existence of any pry bar marks on the door through which entry was made. In actual fact then, but not revealed to the magistrate, the only remaining purpose for securing a warrant to search defendant's residence was to seize a "mallet." Therefore, under Rey, supra, the misstatements concerning the brief case and pry bar must be excised.
As to the material omissions, the affidavit recites only that the victim was "confronted at his residence by ... [defendant] who was in possession of the previous described stamps.... [Defendant] at that time exchanged the stamps for one thousand dollars which was given him by the victim Hillary." No mention was made about the large sign advertising the $1,000 reward for the return of the stamp collection, the phone calls, etc. Omission of these facts created an impression that defendant showed up at Hillery's residence and demanded $1,000 for the stamp books. Hence, under Lehnen, supra, we must add these omitted facts to those originally included in the affidavit.
When the misstatements (missing brief case and use of a pry bar) are excised from *1135 the affidavit and the omitted facts (the reward, etc.) are added, we must retest the sufficiency of the showing of probable cause. Rey, supra; Lehnen, supra.
The only recited facts to establish probable cause that defendant committed the burglary were that he was a carpenter, he was in possession of the stolen stamp books, and the door (point of entry) had been forced open with what "appeared" to be a "carpenters mallet."
First, we find no significant relationship between the fact that defendant was a carpenter and that the door (point of entry) had been forced open with a mallet. We do not consider a mallet to be a tool peculiar to that of a carpenter. Most people keep a mallet or hammer at their residence. Nor do we consider that the use of a mallet to force entry through a door is indicative of the method that a carpenter might use to gain entry. On the contrary, it would seem that a carpenter would more than likely use a more sophisticated method of gaining entry. Hence, the only remaining fact to establish probable cause was defendant's possession of stolen stamp books. We do not consider that possession of stolen property some nine weeks after the theft is of much probative value that the possessor was the burglar. Moreover, whatever slight probative value such possession might have is reduced by the fact that the possession was at a time that the possessor was exchanging the property for an advertised reward.
Under the circumstances, we consider that the facts recited in the affidavit did not establish probable cause for the issuance of the search warrant. Hence, the trial judge erred in denying defendant's motion to suppress.
Defendant also contends that the affidavit contained intentional misrepresentations by the affiants. In State v. Rey, supra, we held that if misrepresentations are intentionally made, the warrant must be quashed because these distorted statements constitute a fraud upon the courts and represent impermissible overreaching by the government. However, having concluded that the facts recited in the affidavit, after excising the misrepresentations and adding the omissions, do not establish probable cause, we need not decide whether or not the affidavit contained intentional misrepresentations because, if it did, the warrant would have to be quashed. This would have the same effect as suppressing the evidence because the affidavit did not establish probable cause for the issuance of the warrant.[3]

DECREE
The judgment of the trial court denying defendant's motion to suppress is reversed; the motion to suppress is granted; defendant's conviction and sentence are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[*] Judge Richard J. Gauthier participated in this opinion as associate justice, ad hoc, in place of Justice Lemmon, recused.
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] Officers Gordon and Riviere (affiants) did not initially investigate the burglary. Officer Samuel Bua was the initial investigating officer and the person who signed the incident report. Officer Alfred Wilson was the crime lab technician on the scene and the person who signed the crime scene technician report.
[3] We in no way intend to imply a finding of intentional misrepresentations. As stated, we simply need not decide the issue.