626 So.2d 480 (1993)
STATE of Louisiana
v.
Paul EVINS.
No. CR 93-462.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*482 Douglas L. Hebert, Jr., Kinder, for State of LA.
Jonathan C. Vidrine, Thomas M. Abrusley, Oakdale, for Paul Evins.
Before STOKER, DOUCET and SAUNDERS, JJ.
SAUNDERS, Judge.
Defendant, Paul Evins, was charged by bill of indictment filed on February 18, 1992, with allegations that on or about January 10, 1992, he:
A. Did unlawfully produce or manufacture a controlled dangerous substance classified as R.S. 40:964, Schedule II, to-wit: "Crack" cocaine, in violation of R.S. 40:967(A)(1).
B. Did unlawfully possess, with intent to distribute a controlled dangerous substance, classified in R.S. 40:964, Schedule II, to-wit: Cocaine, in a quantity greater than 400 grams, in violation of R.S. 40:967(A)(1) and (F)
C. On or prior to January 10, 1992 did unlawfully conspire with Sally Moreaux, Mark Clemmons, Michael Randolph, and Ricky Hinds, [sic] to produce, manufacture, distribute, or dispense or possess with intent to produce, *483 manufacture, distribute or dispense a controlled dangerous substance classified in R.S. 40:964, Schedule II, to-wit: Cocaine, in excess of 400 grams, in violation of R.S. 40:979
D. On or prior to January 10, 1992 knowingly engaged in or conducted financial transactions involving proceeds known to be derived from a violation of R.S. 40:966 et. seq., (drug offense), in violation of R.S. 40:1049
E. On or prior to January 10, 1992 conspired with Sally Moreaux to knowingly engage in or conduct financial transactions involving proceeds known to be derived from a violation of R.S. 40:966 et. seq. (drug offense), in violation of R.S. 14:26
F. On or prior to January 10, 1992 did unlawfully possess drug paraphanalia [sic], in violation of R.S. 40:1033
However, charges "D" and "E" were severed upon motion by the state prior to trial. On June 26, 1992, defendant was found guilty on the remaining charges. On January 19, 1993, defendant was sentenced to thirty (30) years at hard labor with the Department of Corrections on the charge of producing and manufacturing a controlled dangerous substance, to-wit: "crack" cocaine. As to the charge of possession with intent to distribute a controlled dangerous substance to-wit: cocaine in a quantity greater than 400 grams, defendant was sentenced to serve thirty (30) years at hard labor to run concurrent with the first sentence. On the conspiracy to produce, manufacture, distribute or dispense a controlled dangerous substance, defendant was sentenced to fifteen (15) years to run concurrent with the other charges and on the misdemeanor drug paraphernalia charge defendant was given a thirty (30) day sentence to run concurrent with the other charges. Furthermore, we note that in addition to the sentences imposed on the above convictions, the trial court also gave defendant a ten (10) year concurrent sentence on the charge of knowingly engaging in or conducting financial transactions involving proceeds known to be derived from a violation of LSA-R.S. 40:966, et seq. The district judge sentenced the defendant on a charge that had previously been severed and which is not properly before this court.[1] Defendant appeals his convictions alleging eighteen assignments of error. However, several of these specified assignments were not briefed and are, therefore, considered abandoned pursuant to Uniform Rules, Courts of Appeal 2-12.4.

FACTS
Paul Evins, the defendant, was operating a drug trafficking business in Oakdale, Allen Parish, Louisiana. Evins would purchase cocaine in powder form in Houston, Texas, either personally or through his agent, Mark Clemmons. The cocaine in powder form would be brought back to Oakdale and would be cooked into "crack" cocaine either by Evins or his agent. The "crack" cocaine was for local distribution. Money for and from the operation was held for Evins in the home of and/or in bank safety deposit boxes by his sister, Sally Moreaux.
On January 1, 1992, Grant Willis of the Allen Parish Sheriff's Office, via a reliable and established confidential informant used on other occasions resulting in arrests, learned that Paul Evins had made a trip to Houston, Texas, on or about December 31, 1991, to purchase cocaine to cook into crack form and resell in Oakdale. On January 8, 1992, the same confidential informant advised Detective Willis that Paul Evins had again made a trip to Houston, Texas, to purchase cocaine. This information was verified by a second confidential informant on January 9, 1992. Based upon the information received from the confidential informants and other information in the hands of the Allen Parish Sheriff's Office, a search warrant was obtained for the person of Paul Evins, the mobile home in which he resided, and vehicles belonging to him, said search warrant *484 allowing for the search to be made during the day or night, Sundays or holidays.
A surveillance was begun by the Allen Parish Sheriff's Office to try to locate Evins either with one of his vehicles or at his residence. At approximately 1:45 a.m., January 10, 1992, both of Evins' vehicles were located at the residence of Mark Clemmons. At a trailer a few hundred feet from the Clemmons' house, a sentry or guard (Mike Randolph) appeared to be posted at the front of the trailer and there were lights on in the trailer. Deputies from the Allen Parish Sheriff's Office in conjunction with deputies from the Oakdale Police Department split into two groups. One group was to execute the search warrant of Paul Evins' residence. The other was to be prepared to see if Paul Evins was at the Hawkins' trailer, if Evins was not at his own residence.
When the first group arrived at Evins' residence, they found that he was not there and notified the second group. Part of the second group went to the back of the Hawkins' trailer and part of the group went to the front. When they arrived at the front of the trailer, Mike Randolph, the sentry or guard knocked on the door twice with his elbow or hand. Detective John Beard with the Allen Parish Sheriff's Office went to the door of the trailer. Frank Hawkins, calling from inside the trailer, asked who was there and Detective Beard responded, "It's John Beard with the Allen Parish Sheriff's Office." He was advised by Mr. Hawkins to enter, but the door was locked. When Detective Beard told Mr. Hawkins that the door was locked, Mr. Hawkins unlocked the door for him to enter. Detective Beard heard running footsteps from inside the trailer as he entered. Detective Beard and Officer Raydell Dill of the Oakdale Police Department entered the trailer. Detective Beard advised Mr. Hawkins that they were looking for Paul Evins and Mr. Hawkins gave them permission to look in his trailer. Officer Dill went into the right bedroom and Detective Beard went to the left through the kitchen. As he went through the kitchen, Detective Beard observed several items on the counter that appeared to be part of a "cocaine operation," such as a police scanner tuned to the Oakdale Police Department frequency, two microwaves, plastic baggies with white residue, Pyrex cups, baking soda and a Pyrex cup containing a cookie shaped object in the microwave. The back door to the trailer was open and Detective Beard observed several individually wrapped cookies of what appeared to be "crack" cocaine on the ground.
Detective Beard found Paul Evins in the back bedroom adjacent to the opened back door. He was lying on the bed, fully clothed except for his shoes. Shonda Thomas, who was also fully clothed, was standing on the side of the bed. They were both brought into the living room and all the occupants were given their Miranda rights.
Detective Beard then advised Mr. Hawkins that there appeared to be "a felony in progress," and asked for permission to search his trailer and premises. Detective Beard explained what a "permission to search" was to Mr. Hawkins and then Officer Bob Smith with the Oakdale Police Department read the Permission to Search form to Mr. Hawkins. Mr. Hawkins was not intoxicated and appeared to be alert and aware of what was going on. He signed the Permission to Search form voluntarily and knowingly and stated that he understood what it was and had "nothing to hide." Mr. Hawkins further stated that Paul Evins had permission to use the trailer when he wanted but that Evins did not rent a room from him. If Evins wanted to use the trailer, Hawkins would lend him a key and Evins would then return the key to him. Mr. Hawkins said that Evins sometimes gave him money for cigarettes and things, but that Evins could use the trailer whether he paid him anything or not. Paul Evins did not keep his clothes there nor did he have a key.
The police seized from the interior of Hawkins' trailer contraband which included: two microwaves, boxes of baking soda, Pyrex cups, including one with a still hot cocaine cookie inside, six sandwich size baggies containing cocaine powder residue, a police scanner, a digital scale, and other plastic baggies.
Furthermore, as the police entered the front door, Ricky Hines fled out of the back door and was later apprehended by the police. Immediately after Hines exited the *485 trailer, Mark Clemmons came running out of the trailer by the same back door carrying two paper bags. When he saw the police, he threw the bags down in Mr. Hawkins' backyard and continued to flee but was apprehended by the police. The contents of the bags were strewn from the back door across the yard. Seized from the yard were two Pyrex cups (one containing a cookie of "crack" cocaine not yet wrapped), and over 900 grams of "crack" cocaine in individually wrapped cookie form having a street value of over $100,000.00. A triple beam scale was also found in a shed on the Hawkins' trailer premises.
From the evidence seized at the Evins' trailer pursuant to a search warrant,[2] along with other information accumulated by the Allen Parish Sheriff's Office in this investigation, it was believed that Evins' sister, Sally Moreaux, kept Evins' drug money for him. Search warrants for two banks in Oakdale, Louisiana, were obtained and executed on January 15, 1992. Found and seized in a safety deposit box at one of the banks in the name of Sally Moreaux and Vergie Christian, another sister of Evins, was $30,300.00 stacked in bundles of $1,000.00 each in a manner commonly used by drug dealers. Additionally, the search revealed that there was approximately $30,000.00 more in savings and checking accounts. A search warrant for the home of Sally Moreaux was also obtained and executed on January 15, 1992. At the Moreaux residence, police discovered $5,000.00 in cash hidden in a boot in a closet. The boot was alerted upon by the Allen Parish Sheriff's Office drug dog and the money was wrapped in the same manner as the $30,300.00 found in the bank safety deposit box earlier that day.

ERRORS PATENT
LSA-C.Cr.P. art 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows that the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. art. 914 or 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform the defendant of the prescriptive period in advance; thus, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten (10) days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of these proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.1993).

ASSIGNMENTS OF ERROR
1.
The trial court improperly allowed evidence of other crimes evidence without first allowing the defendant a Prieur hearing pursuant to State v. Prieur.

2.
The trial court improperly allowed a possible defense witness to remain in the courtroom, notwithstanding the fact that defendant moved and was allowed to sequester all witnesses, and therefore defendant could not call Mr. Craiger as a defense witness under cross examination because he was allowed to remain in the courtroom throughout the proceedings.
3.
The trial court erred in allowing the State to introduce evidence obtained via a warrant wherein information from a confidential informant was used and also wherein the State did not prove the credibility nor reliability of the confidential informant.

*486 4.
The trial court improperly stated and made reference to the jury concerning a separate charge against defendant, specifically a financial transactions crime involving proceeds derived from alleged drug offenses, and which charge was severed from the charges at issue, thereby prejudicing the defendant before the jury.
5.
The State, in opening statement, prejudiced the defendant by referring to money laundering charges and other crimes evidence without regards to safeguards.
6.
The trial court erred in denying defendant's motion to suppress evidence based on an illegal search, resulting from an invalid voluntary search consent by Mr. Hawkins.
7.
The trial court erred in finding that the search of Mr. Hawkins' trailer home was voluntary and that Mr. Hawkins could give consent to search because the defendant was actually renting a room and he was the proper person to allow consent, if any, for a search.
8.
The trial court erred in accepting Grant Willis as an expert in narcotics trafficking, identification of drug paraphernalia and identification of narcotics.
9.
The trial court erred in allowing Mr. Willis to testify as to hearsay statements from an alleged confidential informant.
10.
The trial court erred in receiving into evidence photographs and a videotape wherein said evidence was not mentioned in opening statements of the State, pursuant to Article 769 of the Code of Criminal Procedure.
11.
The trial court erred in allowing testimony concerning a search of safety deposit boxes of banks in Oakdale, Louisiana because the charge of money laundering was not being tried against defendant at this trial.
12.
The trial court erred in allowing testimony concerning money found in Sally Moreaux's safety deposit boxes because said evidence was irrelevant to the actions of defendant.
13.
The trial court erred in allowing testimony concerning a search at the residence of Sally Moreaux, because any evidence recovered therein was irrelevant and is irrelevant to defendant, thereby prejudicing defendant.
14.
The trial court erred in allowing evidence of other crimes and investigations concerning defendant.
15.
The trial court erred in not granting defendant's motion during trial to sever conspiracy charges.
16.
The trial court erred in not allowing defendant to elicit testimony from Detective Willis, reference other cases investigated by the confidential informant, reference the reliability and credibility of the confidential informant.
17.
The trial court erred in allowing evidence and not granting a mis-trial because Detective John Beard stated to the Jury that he knew of Paul Evins since 1987 and this was prejudicial because the jury could then infer that Mr. Paul Evins may have been involved in investigations for that period *487 of time, which may not have been the actual case.
18.
The trial court erred in not disallowing the testimony of Officer Powers because Officer Powers' name and substance of testimony had not been revealed to defendant when they responded to defendant's pre-trial motions for discovery and bill of particulars, although the District Attorney did produce the names of all other witnesses.

ASSIGNMENTS OF ERROR NUMBER 1, 5, 11, 14 AND 17
Because these assignments of error address common issues of fact and law, they will be addressed together. Defendant's basic contention is that the trial court improperly allowed evidence of other crimes into evidence without first allowing the defendant a Prieur hearing pursuant to State v. Prieur, 277 So.2d 126 (La.1973).
First, defendant alleges error occurred when in the state's opening statement it was mentioned that a search warrant had been obtained and that pursuant to this warrant, safety deposit boxes in the name of Sally Moreaux were located containing a large sum of money. Moreover, defendant also contends that the state alluded to the fact that Sally Moreaux's residence was searched resulting in the finding of another large sum of money. He argues that the jury should not have heard any statements regarding these crimes because they were severed prior to trial.
The defendant, Paul Evins, was charged by indictment with and tried on the crime of conspiring with Sally Moreaux, Mark Clemmons, Michael Randolph and Ricky Hines to produce, manufacture, distribute or dispense cocaine in an amount in excess of 400 grams. Defendant was also charged with possession with intent to distribute cocaine in excess of 400 grams, as well as the production or manufacture of cocaine, and possession of drug paraphernalia.
LSA-R.S. 14:26(A) describes criminal conspiracy as:
"the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
Elements of the crime of conspiracy can be proved either by circumstantial or direct evidence. State v. Stewart, 452 So.2d 186 (La.App. 4th Cir.), writ denied, 456 So.2d 1014 (La.1984). This is true even when the defendant is on trial for a completed offense. State v. Kaufman, 331 So.2d 16 (La.1976), cert. den., 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976). In proving a criminal conspiracy, the acts or declarations of each conspirator in the furtherance of the common purpose are admissible against all co-conspirators since said acts or declarations are deemed to be the acts or declarations of all co-conspirators. State v. Courtney, 170 La. 314, 127 So. 735 (1930). Consequently, the acts of each co-conspirator are admissible in proving not only the existence of the criminal conspiracy but also the defendant's connection thereto. Additionally, the overt act need not be in and of itself unlawful as long as it accompanies or follows the agreement and is done in furtherance of said agreement. State v. Guillory, 540 So.2d 1212 (La.App. 3d Cir.1989).
Inherent in the crime of producing or manufacturing "crack" cocaine is the maintaining and use of funds for the purchase of cocaine in powder form to manufacture it into "crack" form. Further, inherent in the crime of distributing or dispensing cocaine is the derivation of monies from sale of same, to be either used as profit for the distributor or as monies to be reinvested in his "drug manufacturing business." It is for this reason that monies seized as a result of drug-related offenses are admissible as circumstantial evidence in proving the guilt of the defendant in a drug-related crime. This is simply one link in the chain of the criminal conspiracy.
In the case at hand, the defendant was charged with conspiring with several people, namely: Mark Clemmons, Ricky *488 Hines, Michael Randolph and Sally Moreaux, in the production, manufacture, distribution or dispensing of "crack" cocaine. The part played by each can be used in the prosecution of one or all of the co-conspirators. Uncontroverted testimony was adduced at trial showing that Michael Randolph was the sentry guard stationed at the Hawkins' trailer door to warn of the appearance of the police while cocaine was being cooked into "crack" form inside the trailer. In the trailer where "crack" cocaine was cooking was Mark Clemmons (who later tried to exit the trailer's back door with as much "crack" cocaine as he could carry), Ricky Hines and Paul Evins. One or all of the three were in the process of cooking the cocaine at the time the police arrived. Evidencing this is the fact that a cookie of "crack" cocaine was still bubbling in one of the microwaves in the trailer when the police entered.
According to the testimony at trial, this was at least the second batch of cocaine brought into the Oakdale area from Houston, Texas, by Evins in a ten (10) day period. The first trip was on or about December 31, 1991, and the second was on or about January 8, 1992. Making these trips was either Evins himself or Clemmons. The street value of the second batch of "crack" cocaine was over $100,000.00. No large sums of money were found either at the Hawkins' trailer or Evins' trailer. However, in searching the Evins' trailer for contraband, there were receipts and other documents found indicating that Evins' money was being held for him by his sister, Sally Moreaux.
Based upon this information and information from their confidential informant and based upon a validly issued search warrant, over $60,000.00 in cash was found in the possession of Sally Moreaux$30,300.00 of which was found in a bank safety deposit box wrapped in a manner commonly used by drug dealers and another $5,000.00 which was found by the drug dog hidden in a boot in Moreaux's home also wrapped in a manner commonly used by drug dealers. All of this information was presented at trial to prove that a single criminal conspiracy to produce, manufacture, distribute or dispense "crack" cocaine existed by and between Paul Evins, Sally Moreaux, Ricky Hines, Mark Clemmons, and Michael Randolph; and to show that the role played by each was vital to its existence and perpetuation of the drug business. See State v. Upchurch, 510 So.2d 112 (La.App. 3d Cir.1987).
Consequently, all of the evidence adduced at trial was either evidence of the other three individual crimes with which Evins was charged or of the criminal conspiracy involving not only Evins but also Moreaux, Clemmons, Hines, and Randolph. Thus, there was no evidence of "other crimes" presented at the trial necessitating the requirement for a Prieur notice or Prieur hearing.
Defendant also takes issue with the testimony of Detective John Beard and Detective Grant Willis. Defendant alleges Detective Beard inferred that the defendant had been involved in criminal activity since 1987, when he testified that he had known defendant since 1987, especially in light of the fact that Detective Beard is an experienced narcotics investigator. During trial, defense counsel moved for a mistrial which was denied by the trial court. Defendant contends that the severity of Detective Beard's comment made an admonition pursuant to LSA-C.Cr.P. art 771 insufficient.
A police officer is not a "court official" within the meaning of LSA-C.Cr.P. art 770 as to whom a reference to another crime would require a mistrial. Rather, LSA-C.Cr.P. art 771 is applicable and provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark *489 or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In the instant case, the trial judge did not admonish the jury.
In State v. Young, 426 So.2d 370 (La. App.2d Cir.1983), on direct examination, the prosecutrix asked a police officer if he had personally observed the defendant when he drove by the scene to which the officer replied, "Yes. Yes. I have known Mr. Young for a number of years." Young, supra, 426 So.2d at 371. As in the case sub judice, the defendant in Young moved for a mistrial. In Young, the appellate court agreed with the trial court's determination that the remark did not refer to other crimes and was not prejudicial. The mere fact that a police officer has "known" a person for a number of years does not imply that the person has committed other crimes. See State v. Green, 409 So.2d 563 (La.1982). As such, we find that the trial court did not err in its discretion in denying defendant's motion for a mistrial and in not admonishing the jury.
Defendant also points out another incident during which the state asked Detective Beard what other information he had to tie these people in with Paul Evins, to which Detective Beard replied:
"The information that I had received from confidential informants was that Sally Moreaux or two or three of Paul Evins' sistersthe main one that I received information on was Sally Moreauxthat these sisters were holding the currency that was obtained from drug trafficking activity by Paul Evins. Whenever I started researching the paperwork seized from the mobile home at 1111 Oliver Street and from vehicles, I found some receipts where Sally Moreaux had paid for numerous items."
Defendant argues that the district attorney's office, through the testimony of Detective Beard, introduced evidence of other crimes, specifically, evidence of the financial transaction crimes that were severed by the state. However, as discussed earlier, these statements referred to conduct which constituted an integral part of the act or transaction, that was the subject matter of the present proceeding. See LSA-C.E. art. 404(B)(1); State v. Brewington, 601 So.2d 656 (La.1992).
Defendant also contends that Detective Grant Willis referred to "other crimes," when he answered a question, concerning how he knew where defendant resided, with the response "throughout other investigating and also seeing through surveillance and observing Mr. Evins coming and going from the trailer." After a review of the record, we find that no objection was made regarding this remark. A new ground for objection cannot be presented for the first time on appeal. See State v. Johnson, 438 So.2d 1221 (La.App. 3d Cir.1983); see also LSA-C.Cr.P. art. 841.
Accordingly, we find these assignments of error lack merit. Any reference made by the state or testimony elicited by the state with regard to the financial transactions was admissible as evidence of the criminal conspiracy existing between the defendant and his sister, Sally Moreaux. For the above and foregoing reasons, these assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that the trial court improperly allowed a possible defense witness, Ron Craiger, an investigator for the Allen Parish District Attorney's Office, to remain in the courtroom notwithstanding the fact that the defendant had previously moved for the sequestration of all witnesses.
The trial court denied the defense motion to sequester Mr. Craiger finding that allowing Mr. Craiger to remain in the courtroom throughout the trial would not disqualify him as a witness. Also, the trial court found that the state would be handicapped in presenting their case if the court granted defense's motion.
Although defendant assigns as error the judge's ruling permitting Mr. Craiger to remain in the courtroom, no timely objection was entered to the court's ruling exempting Mr. Craiger and hence, the issue is not properly presented for our review. LSA-C.Cr.P. *490 art. 841. In any event, even considering defendant's argument on the merits, we find that the defendant was not prejudiced by the court's decision to allow Mr. Craiger to remain in the courtroom.
LSA-C.Cr.P. art. 764 states that the exclusion of witnesses is governed by LSA-C.E. art. 615 which mandates that, upon request of a party, the court shall order the witnesses excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. However, this mandate is qualified in that the court may exempt any witness from the order "in the interests of justice." LSA-C.E. art. 615.
"The often repeated purpose of the rule is to prevent witnesses from being influenced by prior testimony and to strengthen the role of cross-examination in developing the facts." State v. Williams, 346 So.2d 181, 185 (La.1977), citing State v. Johnson, 343 So.2d 155 (La.1977) and State v. Bias, 337 So.2d 426 (La.1976). However, as stated earlier, the trial judge may, in the "interest of justice," modify his exclusion order and should he choose to do so, his ruling will not be disturbed on appeal absent an abuse of discretion. State v. Williams, supra.
In this case, the record is clear that the purpose of the sequestration rule was not endangered by Mr. Craiger's attendance. Apparently, the trial court permitted Mr. Craiger to remain in the courtroom in order to assist the state with the presentation of its case. The assistance of one police officer to assist the prosecution in the presentation of its case has been held by the Louisiana Supreme Court to be "good cause" for an exemption from a sequestration order. State v. Thomas, 470 So.2d 413 (La.App.3d Cir.1985), citing State v. Ferguson, 240 La. 593, 124 So.2d 558, 567-68 (1960) (on rehearing), cert. denied, 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237 (1961). The trial court had good cause to exempt Mr. Craiger from the order of sequestration.
Moreover, there is no showing of prejudice to the defendant by Mr. Craiger's continued presence in the courtroom. The only reference to Mr. Craiger during the entire trial was in response to defense's question, "who took the photographs?" to which Detective Beard replied, "Myself and Investigator Craiger with the District Attorney's Office. I took quite a few photographs."
The defendant has not shown that he was materially prejudiced by the witness' continued presence in the courtroom. Clearly, there is no evidence in the record which in any way indicates that Evins was prejudiced by the trial court's decision to allow Mr. Craiger to remain in the courtroom. We find that the trial court was well within its discretion and that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
Defendant argues that the trial court erred in allowing the state to introduce evidence obtained via a search warrant, wherein information from a confidential informant was used, where the state did not prove the credibility nor reliability of the confidential informant.
On the second day of trial, defendant's counsel filed a motion to suppress evidence seized as a result of a search warrant issued on January 9, 1992, and executed on January 10, 1992, for the search of defendant's resident at 1111 Oliver Street in Oakdale, Allen Parish, Louisiana.
LSA-C.Cr.P. art. 703 addresses the application for a motion to suppress and provides:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
* * * * * *
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.

* * * * * *

*491 (Emphasis added.)
In the instant case, the trial court exercised its discretion and allowed the filing of the motion even though it felt that the motion should have been filed earlier. Thereafter, at the hearing on the motion, the court allowed the defense to call its first witness, Mr. Frank Hawkins. Hawkins testified concerning his consent to the search of his mobile home. Thereafter, without receiving any other testimony concerning the search warrant, the trial court denied defendant's motion to suppress and the trial resumed.
Subsequently, after the testimony of Detective Grant Willis concluded, the court again addressed the validity of the search warrant as demonstrated by the following colloquy:
"THE COURT: (Inaudible) search warrant. However, I think it's (inaudible) because I ruledI previously ruled that thethat Mr.What's the owner of the place?
MRS. COLE: Frank Hawkins.
THE COURT: Mr. Hawkins gave his consent. So it really wasn't necessary to have the search warrant since that's an exception to the requirement when the owner gives his consent. Once consent was given, anything in plain view is subject to seizure. However, for what it's worth, I do find that the search warrant taken as a totality is sufficient. One of the areas which might very well be attackedWe have the confidential informant number one stated that a reliable established confidential informant who had been used on other occasions resulting in arrest. That's sufficient. The creditability [sic] and reliability of the informant may be established by the fact that his information has be [sic] accurate in the past or has resulted in previous arrests. However, that is not the case with confidential informant number two. It said on January 8, 1992 during the evening hours, Detective Grant Willis contacted another reliable established confidential informant, CI #2. The courts have held that that is not sufficient. The affiant must do more than simply assert that the informant is known by the affiant to be reliable. I think that you have to either state that his information in the past has led to arrests or if that cannot be established, then you have to have surrounding supportive evidence. And I think taken as a whole, that is the information that Paul Evins was known to have been previously convicted and to have been released and that he had purchased several vehicles recently and had been unemployed since his release from prison. I think that all the surrounding things support the affidavit and that is sufficient.
MRS. COLE: Thank you, Your Honor.
MR. ABRUSLEY: Judge, what you're saying is both confidential informant # 1 and # 2, they're ...
THE COURT: If there had been nothing elseNumber one, confidential informant number one by the affidavit itself states that his information has resulted in other arrests. That's sufficient. Now that clause was not added as confidential informant number two. It says another reliable established confidential informant, CI # 2. That is not enough. But what I'm saying is, that plus the other information contained on the application for search warrant, the fact that he had recently been released from prison, that he was unemployed and had bought vehicles, that together with all of the other information makes it reliable and sufficient for taking the totality of the information. So even though it's notI don't think that it's absolutely necessary to have used the search warrant, I am ruling that it is sufficient. Okay. You're still under your oath, Mr. Willis. Call the jury in."
In State v. Morstein, 404 So.2d 916, 919-20 (La.1981), the Louisiana Supreme Court stated:
"Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be *492 seized. U.S. Const. amend. IV; La. Const. art. 1, § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Mena, 399 So.2d 149 (La.1981); State v. Wichers, 392 So.2d 419 (La.1980); State v. Baker, 389 So.2d 1289 (La.1980); State v. Richards, 357 So.2d 1128 (La.1978). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); State v. Mena, supra; State v. Wichers, supra; State v. Baker, supra; State v. Richards, supra.

* * * * * *
"It is well established that the credibility of the affiant's informant or the correctness of the information furnished by the informant may not be attacked on a motion to suppress.... However, the credibility of the affiant himself may be traversed on a proper showing of `a genuine issue on the affiant's veracity supported by convincing allegations of fact which, if proven, would establish the falsity of the affidavit.'"

(Citations omitted in part.)
In Detective Grant Willis' application for a search warrant the reasons and facts for the request of the search warrant are explicitly set forth as follows: First, on January 1, 1991, Detective Willis was contacted at his residence by a "reliable established confidential informant that had been used on other occasions resulting in arrests" and was advised that Paul Evins had left on December 31, 1991, enroute to Houston, Texas, to purchase some cocaine. On January 8, 1992, Detective Willis was again contacted by this CI and was advised that defendant had gone to Houston on January 7, 1992, to purchase several more ounces of cocaine. The application for a search warrant further states that during the evening hours Detective Willis contacted another established reliable confidential informant (CI # 2) and asked this CI # 2 to attempt to make contact with the defendant in order to verify information. Approximately two hours later, CI # 2 informed Detective Willis that the defendant was in front of his mobile home selling cocaine out of his vehicle. The application went on to add that the detectives had been advised on numerous occasions that defendant had resumed his cocaine business since his release from a state correctional facility. During trial, Detective Willis reiterated the above mentioned factors.
In the instant case, no evidence was presented to controvert the affiant, Detective Willis', testimony. The trial court obviously believed Detective Grant Willis' testimony that he felt probable cause existed as a result of the information gathered from the two confidential informants, as well as through information gained as a result of prior investigations. Credibility determinations are functions of the trier of fact and will not be disturbed on appellate review absent manifest error.
For the foregoing reasons, we find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant alleges by this assignment of error that the trial court improperly stated and made reference to the jury concerning a separate charge against defendant, specifically a financial transaction crime involving proceeds derived from alleged drug offenses, and which charge was severed from the charges at issue, thereby prejudicing the defendant before the jury.
Defendant was originally charged by Bill of Indictment with the following crimes, to wit, that he:
A. Did unlawfully produce or manufacture a controlled dangerous substance classified as R.S. 40:964, Schedule II, *493 to-wit: "Crack" cocaine, in violation of R.S. 40:967(A)(1).
B. Did unlawfully possess, with intent to distribute a controlled dangerous substance, classified in R.S. 40:964, Schedule II, to-wit: Cocaine, in a quantity greater than 400 grams, in violation of R.S. 40:967(A)(1) and (F)
C. On or prior to January 10, 1992 did unlawfully conspire with Sally Moreaux, Mark Clemmons, Michael Randolph, and Ricky Hinds, [sic] to produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute or dispense a controlled dangerous substance classified in R.S. 40:964, Schedule II, to-wit: Cocaine, in excess of 400 grams, in violation of R.S. 40:979
D. On or prior to January 10, 1992 knowingly engaged in or conducted financial transactions involving proceeds known to be derived from a violation of R.S. 40:966 et. seq., (drug offense), in violation of R.S. 40:1049
E. On or prior to January 10, 1992 conspired with Sally Moreaux to knowingly engage in or conduct financial transactions involving proceeds known to be derived from a violation of R.S. 40:966 et. seq. (drug offense), in violation of R.S. 14:26
F. On or prior to January 10, 1992 did unlawfully possess drug paraphanalia, [sic] in violation of R.S. 40:1033
Counts D and E were severed by the state prior to trial.
Evins complains that he was prejudiced when the trial judge read the indictment to the jury at the beginning of the trial and inadvertently read the jury the two charges against the defendant that had been severed. These specific charges related to financial transactions involving proceeds known to be derived from a violation of LSA-R.S. 40:966, et seq., and conspiracy to engage in financial transactions involving proceeds known to be derived from a violation of LSA-R.S. 40:966, et seq.
After the court referred to these severed charges, defense counsel requested leave to approach the bench. After an off-the-record bench conference was conducted, the trial court again read the severed charges and then admonished the jury to disregard them, stating "[t]hese two, the state severed from this trial. They have not dismissed the charges, but they will not be heard by you. So disregard them completely." At that point, defense counsel simply objected and the trial court noted defendant's objection for the record. The record does not reflect that defense counsel moved for a mistrial at this time, nor does defense counsel allege, by brief or otherwise, that a motion for mistrial was made as to this objection.
LSA-C.Cr.P. art 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In the case sub judice, there is neither evidence nor allegation that defense counsel requested a mistrial. Subsequent to a bench conference, the trial judge corrected his mistake by admonishing the jury to disregard the two severed charges. Since there was an objection followed by a bench conference, followed by an admonishment together with no allegation of a motion for mistrial, we will presume defense counsel moved for an *494 admonishment. Under these circumstances, pursuant to LSA-C.Cr.P. art. 770, the grant of a mistrial was unnecessary.
Additionally, as discussed in more detail above, evidence of Evins' money or financial transaction is part of the res gestae of the criminal conspiracy charge naming Sally Moreaux as a co-conspirator, a charge properly before the jury. Therefore, the reference by the trial judge to the other two charges in the indictment was not prejudicial.
Finally, under LSA-C.Cr.P. art. 770, a mistrial is mandated solely when the evidence as to another crime committed or alleged to have been committed by the defendant is not admissible. In this case, the evidence complained of would be admissible under LSA-C.E. art. 404(B)(1) insofar as "it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding."
This principle was recently discussed in State v. Brewington, 601 So.2d 656 (La.1992), wherein this court's granting of a mistrial was reversed. The Louisiana Supreme Court stated at page 657:
"This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940). State v. Haarala, 398 So.2d 1093, 1097 (La.1981)."
See also State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); (other crimes evidence presented by bill of information not prejudicial).
We find that insofar as the evidence surrounding the charges read to the jury was ultimately admissible there was no error on behalf of the trial court and no prejudice sustained by the defendant by the reading of the severed charges to the jury.

ASSIGNMENTS OF ERROR NUMBERS 6 AND 7
Defendant first contends that the trial court erred in denying defendant's motion to suppress evidence based on an illegal search resulting from an invalidly obtained consent to search. Specifically, defendant complains that the consent given by Mr. Frank Hawkins was not voluntary but was forced and/or coerced by law enforcement personnel. Defendant alleges this consent was not voluntary because it was obtained from an elderly man, Frank Hawkins, who was suddenly surprised and confronted at 2:10 a.m. with numerous law enforcement officials who were armed and aggressive.
Defendant's argument is directly refuted by the testimony of Mr. Hawkins. Although seventy-one (71) years of age, a review of the record containing Mr. Hawkins' testimony reveals that he seemed to be alert and quite capable of making decisions such as a voluntary consent to search his mobile home.
Mr. Hawkins testified that the officers came "right on in" but that they did not "bust in" and that the officers "just pushed him back enough to get in." After they entered, Mr. Hawkins never requested that they leave. Furthermore, Mr. Hawkins stated that although one of the officers was armed with a gun, this gun was never pointed at him nor was he threatened in any way.
Defendant takes issue with a comment made by one officer who stated to Mr. Hawkins, "come on and sign the search warrant.... If you don't, I can wake up the judge and get one." However, we note that merely advising a person that if he does not consent, the police will seek a search warrant *495 does not vitiate a resulting consent. State v. Bourgeois, 388 So.2d 359 (La.1980).
Defendant also alleges that Mr. Hawkins was not advised of his right to refuse consent to a search. However, Mr. Hawkins agreed that the permission to search form was read to him and that he understood. This permission to search form referred to Mr. Hawkins' right to refuse to consent. Therefore, we find defendant's assertion is erroneous.
Moreover, whether consent was given is a question of fact to be determined by all the facts and circumstances of the case and the trial judge's conclusions as to credibility are entitled to great weight. State v. Dickerson, 579 So.2d 472 (La.App.3d Cir.), writ denied in part and granted in part on other grounds, 584 So.2d 1140 (La.1991). During Mr. Hawkins' testimony, he clearly stated that he did in fact consent to the search of his mobile home. Mr. Hawkins admitted that no one ever coerced him into signing the permission to search form, that he knew what he was signing when he signed the form and that he did so voluntarily. We find that the trial judge's determination that the consent was free and voluntary is clearly supported by the record.
Defendant also argues error by the trial court in determining that "Mr. Hawkins' consent allowed a room rented by defendant to be searched." In other words, defendant asserts that his privacy interest in the bedroom could not be waived by his host, Mr. Hawkins.
This issue was discussed in State v. Cover, 450 So.2d 741, 745-46 (La.App.5th Cir.), writ denied, 456 So.2d 166 (La.1984):
"In United States v. Matlock, 415 U.S. 164, 172, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the court summarized the law applicable to this question:
`* * * These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. * *' (Footnote omitted.)
"In State v. Abram, 353 So.2d 1019 (La. 1977), cert. den. 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663, the court noted that a person's expectation of privacy is severely limited by the joint dominion or authority over the property.
"An exception to this general rule occurs when there are within a residence areas or zones for the exclusive use of one tenant or the other. In such a situation, there is no `common authority' which would justify a search based on consent from the non-occupying party. This premise is true in a host/guest relationshipi.e., the host could not consent to a search of a room set aside exclusively for the use of a guest."
In the instant case, no circumstances arose which would invoke an exception to the general rule. Mr. Hawkins testified that there was no rental agreement between himself and the defendant and furthermore, defendant did not keep any clothing there nor did he have a key to the trailer. Mr. Hawkins indicated that the defendant could use the trailer anytime he wanted to and that all he had to do was ask for a key. Mr. Hawkins stated that if he wanted to buy cigarettes or other items, he would ask defendant for the money. However, Mr. Hawkins acknowledged that the defendant could use the room regardless of whether he gave Mr. Hawkins any money. The testimony of Mr. Hawkins demonstrates that the defendant did not have exclusive use of the bedroom. Rather, the evidence demonstrates that Mr. Hawkins had mutual use of the bedroom and could validly consent to its search. State v. Johnson, 343 So.2d 155, 164-65 (La.1977).
For the above and foregoing reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 11, 12 AND 13
Defendant next alleges that the trial court erred in allowing evidence to be presented to the jury that was obtained as a result of a search of a safety deposit box registered to Sally Moreaux and another person as well as a search of Sally Moreaux's residence. Defendant *496 alleges that this evidence was irrelevant and highly prejudicial.
The issue regarding the relevancy of the evidence found at both the bank and Sally Moreaux's residence has previously been discussed in Assignment of Error Number 1. Specifically, this evidence was both relevant and material to prove the existence of a conspiracy between the defendant and his sister, Sally Moreaux, to produce, manufacture or dispense a CDS. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." LSA-C.E. art. 403.
In the instant case, this evidence was necessary to show the existence of the conspiracy between the defendant and Sally Moreaux. Consequently, this evidence was relevant. Furthermore, it took very little time to present this evidence to the jury. The evidence was not complicated, nor does it appear too difficult for the jury to comprehend. Additionally, there was nothing inflammatory in showing pictures of money, even in light of the fact that it was a large sum ($30,000.00), when the introduction of "crack" cocaine in excess of $100,000.00 had previously been introduced.
It is the responsibility of the trial court to exercise reasonable control over the presentation of the evidence. The trial judge is left with wide discretion as to the admissibility of evidence under pertinent evidence rules. Furthermore, the decision of the trial judge will not be overturned absent a clear abuse of discretion. See State v. Clay, 576 So.2d 1099 (La.App. 3d Cir.), writ denied, 580 So.2d 669 (La.1991). There is no showing of an abuse of discretion on the part of the trial judge. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 15
Defendant next argues that the trial court erred in not granting his motion during trial to sever the conspiracy charges. Defendant asserts severance was appropriate because of the prejudicial effect this charge had with respect to the other charges against him.
LSA-C.Cr.P. art 493 states that:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
In the instant case, it is obvious that these charges stemmed from acts or transactions connected together or constituting parts of a common scheme or plan.
As we stated in State v. Hunter, 551 So.2d 1381, 1384 (La.App.3d Cir.1989):
"When an accused is charged in the same indictment with two or more offenses pursuant to art. 493, he may apply for severance of the offenses under La.C.Cr.P. art. 495.1, which provides:
`If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.'
In determining whether prejudice may result from joinder, the trial court should:
`... weigh the possibility of prejudice versus the important considerations of judicial economy and administration. In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in *497 presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.' (Citations omitted.)

State v. Washington, 386 So.2d 1368, 1371 (La.1980); State v. Simpson, 464 So.2d 1104 (La.App. 3rd Cir.1985). A motion for severance is addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984)."
In the present case, the defendant was charged with several offenses that constitute parts of a common scheme or plan. Furthermore, the evidence of each of the charges does not seem to be so difficult that the jury would be confused by consideration of the various counts. Although defendant may have been "confounded" in presenting his various defenses, this should be viewed in light of the fact that defense counsel did not move for a severance until trial had already started. Therefore, weighing the possibility of prejudice versus such important considerations as judicial economy and administration, we find that the trial judge's decision to deny severance was not an abuse of discretion. For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 8, 9, 10, 16 AND 18
These assignments of error have not been briefed and are, therefore, considered abandoned. Uniform RulesCourts of Appeal 2-12.4.

CONCLUSION
Based upon the foregoing, the conviction and sentence of Paul Evins, defendant herein, are hereby affirmed with instructions that the trial court notify the defendant of the three year time limitation set forth LSA-C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] There is a discrepancy between the minutes and actual sentencing transcript. According to the minutes the court sentenced defendant to thirty (30) years concurrent on each of four counts. However, this is quite different than the actual sentence the trial judge imposed as discussed above. When there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Johnson, 533 So.2d 1288 (La.App. 3d Cir.1988), writ denied, 563 So.2d 873 (La.1990).
[2] The search warrant issued on January 9, 1992, was for a search of defendant's residence at 1111 Oliver Street in Oakdale, Allen Parish, Louisiana.