# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-149

**STATE OF LOUISIANA**

**VERSUS**

**KENNETH D. BAYONNE**

\**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 10746
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

\**********

**MARC T. AMY
JUDGE**

\**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and Marc T. Amy, Judges.

**AFFIRMED.**


**Van Hardin Kyzar**
**District Attorney**
**Post Office Box 838**
**Natchitoches, LA   71458-0838**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**James E. Beal**
**Louisiana Appellate Project**
**Post Office Box 307**
**Jonesboro, LA   71251-0307**
**(318) 259-2391**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Kenneth D. Bayonne**

AMY, Judge.

**Factual and Procedural Background**

The defendant, Kenneth D. Bayonne, was charged by bill of information with two counts of possession of a schedule I narcotic (marijuana) with intent to distribute, in violation of La.R.S. 40:966, and one count of possession of a schedule II narcotic (codeine) with intent to distribute, in violation of La.R.S. 40:967. Pursuant to a plea agreement, the defendant pled guilty to one count of possession of marijuana with intent to distribute and one count of possession of codeine with intent to distribute. He reserved the right to appeal the trial court's denial of his motion to suppress evidence.

For each conviction, the defendant was sentenced to nine years at hard labor, to run concurrently. The defendant orally moved for reconsideration of his sentences and subsequently filed a written motion. After a hearing, the trial court denied the motion. The defendant now appeals, challenging the trial court's denial of his motion to suppress.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

*Standard of Review*

"In reviewing a ruling on a motion to suppress, an appellate court considers the totality of the evidence presented at the suppression hearing. Furthermore, unless the trial court's ruling is not supported by the evidence or it is clearly an abuse of

discretion, it is not to be overturned by the appellate court." *State v. Leday*, 05-1641, pp. 7-8 (La.App. 3 Cir. 5/3/06), 930 So.2d 286, 291 (citations omitted).

*Motion to Suppress*

In his sole assignment of error, the defendant contends that "[t]he trial court erred in denying [his] motion to suppress all evidence seized in the custody of the defendant in violation of his Constitutional right to be free from unreasonable search and seizure." He argues that the search warrant was invalid because the affiant did not inform the issuing magistrate that the informant was the defendant's girlfriend and that she "came forward as the result of an altercation and issued a vengeful statement intended to inculpate the defendant."

Louisiana Code of Criminal Procedure Article 162 provides in part: "A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." In *State v. Casey*, 99-23, pp. 3-4 (La. 1/26/00), 775 So.2d 1022, 1027-28, *cert. denied*, 531 U.S. 840, 121 S.Ct. 104 (2000), the supreme court explained:

> A person is constitutionally protected against unreasonable search and seizure of his house, papers and effects. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be seized. The general rule is that probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exists that the evidence of a crime will be found in a particular place. Additionally, a search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. Further, an affidavit must contain, within its four corners,

the facts establishing the existence of probable cause for issuing the warrant.

(Citations omitted).

"[T]he credibility of the affiant's informant or the correctness of the information furnished by the informant may not be attacked on a motion to suppress[.]" *State v. Evins*, 626 So.2d 480, 492 (La.App. 3 Cir. 1993). However, the affiant's credibility may be traversed upon a proper showing that a genuine issue exists concerning the affiant's veracity, which is supported by convincing factual allegations, that, if true, would establish the falsity of the affidavit. *Id.*

In *Casey*, 775 So.2d at 1029 (citations omitted), the supreme court explained:

For an affiant to make a material and intentional misrepresentation to a magistrate constitutes a fraud upon the court and will result in the invalidation of the warrant and suppression of the items seized. However, if the misrepresentations or omissions are inadvertent or negligent, the correct procedure is for the warrant to be retested for probable cause after supplying that which was omitted or striking that which was misrepresented.

The defendant claims that the search warrant should be invalidated for an intentional misrepresentation; therefore, he "must prove by a preponderance of the evidence that the affidavit contains intentional misrepresentations." *State v. Trotter*, 37,325, p. 10 (La.App. 2 Cir. 8/22/03), 852 So.2d 1247, 1253, *writ denied*, 03-2764 (La. 2/13/04), 867 So.2d 689 (citations omitted).

At the suppression hearing, Sergeant Roger Henson of the Natchitoches Drug Task Force explained his involvement in the case. He testified that on December 14, 2005, Lieutenant Walker told Corporal Taitano that Jennifer Roque (Roque) was giving him some information about drug activity in the area. Sergeant Henson and Corporal Taitano met with Lieutenant Walker and Roque. According to Sergeant Henson, all three of the men questioned Roque. He testified that Roque revealed that:

[S]he had been an acquaintance of Mr. Bayonne for several years. That uh, during that time she acknowledged the drug transactions that he had participated in, in which he kept a large quantity of uh, suspected narcotics in the storage units there at the Keyser Avenue Storage Unit. And uh, as well as uh, keeping large sums of money at this mother's house in a shoe box.

Sergeant Henson stated that after Roque gave a written statement, he went to obtain a search warrant to search two storage units, one which Roque stated was rented under her name, and the other which was rented under the defendant's name. He also sought a search warrant to search the house of the defendant's mother. Sergeant Henson signed the following affidavit to get the search warrants:

On December 14, 2005[,] agents of the Natchitoches Drug Task Force received information from Sgt. Walker, Criminal Division Supervisor. He stated that on today's date he had received information that Kenneth Bayonne had two storage units at Keyser Avenue Self Storage, units B-29 and F-60, that contained a large amount of suspected marijuana, approximately 20 to 30 pounds, along with approximately 4 to 5 gallons of suspected liquid codeine.

I interviewed this subject personally, who is a close acquaintance of Kenneth Bayonne for the past six years. This person stated that Kenneth Bayonne had approximately 30 pounds of suspected marijuana in the storage unit yesterday along with 4 to 5 gallons of liquid codeine that he/she witnessed. This subject also stated that Bayonne has been transporting large amounts of suspected marijuana and liquid codeine over the past two years and that he stores it in these storage units. According to this subject Bayonne also stores his vehicles in these units as well. This subject further stated that Bayonne also keeps a significant amount of currency hidden in his mother's, Mary Anne Hooper, bedroom closet because he feels that his mother can watch over it for him. Her residence being located at 1116 Highland Park Drive in Natchitoches. This subject also stated that Stacey Kitchen and Marcus Slaughter, both convicted drug offenders, are currently in business with Bayonne.

For the past several years agents of the Natchitoches Drug Task Force has been receiving information that Kenneth Bayonne has been distributing illicit narcotics, namely alprozolam and lortab tablets along with liquid codeine and that Kitchen and Slaughter ha[ve] been distributing suspected marijuana.

4

> For the above reasons I feel a search warrant should be issued for the above location for the purpose of locating any items deemed pertinent to this ongoing narcotics investigation.

Sergeant Henson testified that he did not indicate in the affidavit that the person supplying the information was the defendant's girlfriend. Nor did he disclose the domestic battery incident that had prompted Roque's visit to the police station. According to Sergeant Henson, he was "not exactly sure . . . what happened during that incident. . . . Lieutenant Walker [was] the one who [was] handling that case in which he did obtain warrants for Battery, Domestic Battery I believe it was." Nevertheless, Sergeant Henson testified that when he went to seek the search warrant, he informed the magistrate of the relationship between the defendant and Roque, that they have two children together, and that they had been involved in some kind of domestic battery incident.

Sergeant Henson sought the search warrant on the same day that Roque gave him the information. He admitted that he did not have any independent evidence that the defendant had rented the two storage units or that drug activity was occurring there. Sergeant Henson explained that he did not corroborate the information that Roque provided because he believed that she was credible given her long term relationship with the defendant and the fact that she gave a written statement.

Jennifer Roque testified that she and the defendant had ended their six-year relationship in November 2005 and that they had two children together. She further testified that following a physical altercation in December 2005, she went to the police station to file a report.[1] While there, she wrote a statement detailing the

---

[1] As of the date of trial, Roque and the defendant were not back together. In fact, Roque testified that because of the battery charges, the judge issued a restraining order against the defendant. She also stated that there was currently a restraining order against the defendant as a condition of his bond, but that she asked the judge not to issue it.

defendant's involvement in drug activities. According to Roque, she did not sign her statement because "it's not something I know off hand. I mean just for sure. It was hearsay and I was mad and I just wrote it cause I thought it would hurt him." She explained that she had learned that the defendant had been seeing someone else.

During the hearing, Roque was read a portion of her statement where she stated that: "He keeps the weed and drank[2] in a storage building here in Natchitoches behind Ryan's, number 60."[3] Roque stated that although she and the defendant had been storing items in that unit, she did not know if he kept drugs. She explained that this was hearsay information. When questioned about her statement that she saw "weed and drank at the location along with weed particles, drank, wrappers and packaging of drank[,]" Roque admitted that she never saw these things in the storage unit. Additionally, she admitted that she had no personal knowledge of whether the defendant bought and sold weed and drank, despite including such allegations in her statement. She explained that this was simply something that she heard.

Roque testified that she included specific details in her written statement because the police officers told her that it had to be specific. When questioned about how she obtained this information, Roque answered that "[i]t was like word on the street."

After reviewing the record, we find that the defendant did not prove by a preponderance of the evidence that Sergeant Henson intentionally omitted the details of Roque's relationship with the defendant and the altercation between them. Sergeant Henson testified that he was not present at the entire interview with Roque;

---

[2] The record indicates that "drank" is a slang term for liquid codeine.

[3] When questioned about the other storage unit, Roque answered that she only knew of that one and that the police officers must have learned of the other unit from the employees at the storage facility.

he was called after the interview began and left early to obtain the search warrant. He stated that he knew there was an altercation but did not know the specific details because Lieutenant Walker was handling the case. More importantly, Roque did not contradict any of Sergeant Henson's testimony.

As we find no preponderant evidence that the affiant intentionally misled the issuing magistrate, we will consider, assuming any omission was inadvertent, whether the warrant establishes probable cause when the omitted information is added to the information contained in the affidavit. *Casey*, 775 So.2d 1022.

In *State v. Shaw*, 00-2283, pp. 1-2 (La. 1/5/01), 775 So.2d 1067, 1067-68, the supreme court determined that antagonism between the informant and the subject of the search warrant did not invalidate the warrant even though police officers did not perform any independent corroboration. The court explained why the informant provided information he otherwise would not have disclosed:

> The antagonism that the police informant, a 15 year old juvenile under arrest for possession of over 300 small bags of marijuana, may have felt towards respondent, his father and the source of his marijuana, whom the juvenile believed had sent an armed party to break into his apartment for purposes of reclaiming the stolen drugs, may explain the informant's motivation for providing the information which formed the basis of the search warrant for respondent's home. The informant's desire to help himself on his own charge by currying favor with the police may also have motivated his statement to the police. Nevertheless, that the police had an articulable basis for speculating about the motives of their informant did not necessarily require them to reject the information he provided as not worthy of belief. The informant had first conferred with his mother and then gave his detailed statement in her presence, and the officers confirmed that respondent had a prior drug-related conviction. The officers then sought the approval of a magistrate for the search on the basis of an affidavit which fully disclosed the circumstances under which the informant provided his information for a judicial determination of whether the officers were entitled to act on their informant's tip. Given the possible motives of the informant, and the failure of the police to corroborate his information by placing the targeted premises under surveillance, the question of probable cause is a close one in the present case. However, " 'the

7

resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants.' " *Illinois v. Gates*, 462 U.S. 213, 237, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). We cannot say that the warrant affidavit appeared so deficient that by authorizing the search the magistrate failed to act in a neutral and detached manner and that by executing it the officers acted under circumstances in which they could not have reasonably believed the warrant was valid. *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984).

Here, Roque voluntarily went to the police station and issued a written statement disclosing the defendant's involvement with drugs and the location of the contraband. She did not attempt to conceal her identity. Rather, Roque admitted that she and the defendant, her former boyfriend, had been involved in a physical altercation and that she had found out that he was seeing someone else. Given her close relationship with the defendant, Roque was not acting as a confidential informant but rather as a citizen informant.

"[I]nformation given by citizen informants is inherently credible." *State v. Byrant*, 34,244, p. 9 (La.App. 2 Cir. 12/6/00), 775 So.2d 596, 603, *writ denied*, 01-144 (La. 11/21/01), 802 So.2d 627. As such, the defendant had the burden of proving that there was some circumstance apparent to the affiant indicating that Roque's statement was not true. The evidence shows that Sergeant Henson had very limited interaction with Roque and that he was unaware of the specific details of the physical altercation between the defendant and Roque. The defendant did not show that Roque's refusal to sign her statement was because she was lying. Nor did he show that she has a history of lying or that Sergeant Henson was aware of such history.

Given the evidence, we find that when the information about Roque's relationship with the defendant is included in the affidavit, probable cause still exists. Roque told the officers that she personally observed the contraband. Moreover, she

8

gave specific details regarding the types, approximate quantities, and locations of the narcotics. *See State v. Thomas*, 598 So.2d 639 (La.App. 3 Cir.), *writ denied*, 604 So.2d 965 (La.1992) (wherein this court found that probable cause existed due to the informant's close relationship with the defendant and the fact that she had stated with particularity the premises to be searched and the particular places where the contraband was located).

Even assuming arguendo that probable cause was negated by the additional information, the defendant failed to show that Sergeant Henson executed the warrants in bad faith. We note that Sergeant Henson had little knowledge of the defendant's relationship with Roque and of their physical altercation. *See State v. Long*, 03-2592 (La. 9/9/04), 884 So.2d 1176, *cert. denied*, 544 U.S. 977, 125 S.Ct. 1860 (2005) (wherein the supreme court held that evidence seized pursuant to a search warrant would not be suppressed if it was executed by a law enforcement officer who had reasonably and in good faith relied on the validity of the warrant). For the above reasons, we find that the trial court did not abuse its discretion in denying the defendant's motion to suppress.

This assignment is without merit.

## DECREE

For the foregoing reasons, the defendant's convictions are affirmed.

**AFFIRMED.**